MORRIS PETERSON
Steve Morris, Bar No. 1543
Email: sm@morrislawgroup.com
Akke Levin, Bar No. 9102
Email: al@morrislawgroup.com
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 474-9400
Facsimile:  (702) 474-9422

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| Nevada Power Company, d/b/a NV Energy,<br><br>            Plaintiff,<br><br>vs.<br><br>COMVERGE, INC., a Delaware corporation,<br><br>            Defendant. | Case No.<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff Nevada Power Company (doing business since 2008 as "NV Energy") for its Complaint against Defendant Comverge, Inc. ("Comverge"), hereby alleges as follows:

### NATURE OF CLAIMS

1.  NV Energy seeks a declaratory judgment that certain of its activities and systems program have not infringed or otherwise violated any rights belonging to Comverge, that NV Energy has not violated any agreements, including without limitation, a Non-Disclosure Agreement between Comverge and NV Energy dated February 8, 2007 (the "NDA") (Exhibit 1), and that NV Energy does not owe Comverge for services responsive to a request for proposal ("RFP") project.

MORRIS PETERSON
ATTORNEYS AT LAW
00 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

2. Defendant Comverge was an unsuccessful potential subcontractor in an NV Energy RFP project. In connection with that RFP, Comverge maintains that the parties are bound by the NDA (that arose from a preexisting agreement between the parties). Comverge also claims that NV Energy breached the NDA and owes Comverge money for design services. *See* Exhibit 2. In addition, Comverge has sent improper "cease and desist" letters ("C&D Letters") to NV Energy and several of its vendors. (*See e.g.*, Exhibits 3-4). The C&D Letters do not comply with the NDA that Comverge claims applies and were designed to tortiously interfere with NV Energy's valuable business relationships.

3. NV Energy further seeks damages, attorneys' fees, costs, interest, and permanent injunctive relief.

## JURISDICTION AND VENUE

4. This case arises under the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202.

5. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1332, and 1367. There is complete diversity of citizenship, as described in paragraphs 9 and 10, and the amount in controversy exceeds $75,000, exclusive of interest and costs. As discussed in more detail in paragraph 30, Comverge seeks $1,200,000.00 for various services allegedly compensable.

6. This Court has personal jurisdiction (specific and general) over Comverge because of Comverge's: (a) contracting with and/or offering licensing opportunities to NV Energy, a company known by Comverge to be located in the State of Nevada; (b) soliciting business in the State of Nevada; (c) doing business and maintaining offices in Nevada; (d) sending correspondence and invoices to NV Energy in the State of Nevada; and (e) threatening to take action if NV Energy does not comply with its demands relating to allegedly

MORRIS PETERSON
ATTORNEYS AT LAW
300 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

"confidential information" that Comverge claims NV Energy retained in purported violation of the NDA.

7. Comverge has created an actual case and controversy and a reasonable apprehension of litigation by, among other things, threatening to file suit against NV Energy and by sending threatening correspondence to various NV Energy vendors. *See, e.g.*, Exhibits 3-4.

8. Venue is proper under 28 U.S.C. § 1391(b). In this case, jurisdiction is not founded solely on diversity of citizenship. Therefore, under § 1391(b), venue is proper (1) in a judicial district where any defendant resides, if all defendants reside in the same state, or (2) in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. Comverge is deemed to reside in Nevada under 28 U.S.C. § 1391(c), which provides that a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. As discussed in paragraph 6 *supra*, Comverge was subject to personal jurisdiction in the District of Nevada at the time this action was commenced. In addition, a substantial part of the events or omissions giving rise to this action occurred in the District of Nevada.

## THE PARTIES

9. Plaintiff, Nevada Power Company d/b/a NV Energy, is a Nevada corporation and public utility regulated by the Public Utilities Commission of Nevada. NV Energy's principal place of business and headquarters is located at 6226 W. Sahara Avenue, Las Vegas, Clark County, Nevada. NV Energy is engaged in, *inter alia*, the generation, transmission and distribution of electricity in the State of Nevada.

10. Defendant, Comverge, Inc. is a Delaware corporation with its principal place of business located at 5390 Triangle Parkway, Suite 300, Norcross, GA 30092. Comverge holds itself out as a "leading provider of intelligent energy

MORRIS PETERSON
ATTORNEYS AT LAW
00 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

management solutions that empower utilities, commercial and industrial customers, and residential consumers to use energy in a more effective and efficient manner." (*See* Comverge's website, available at www.comverge.com). Comverge maintains Nevada operations, with offices at 7140 Dean Martin Drive, Las Vegas, NV, 89118-4511.

## ALLEGATIONS COMMON TO ALL COUNTS

*Background – NV Energy's Advanced Service Delivery Program*

11. In 2008, NV Energy began developing its vision for Advanced Service Delivery ("ASD"). ASD is NV Energy's next generation Smart Grid project that is planned to enable customers to directly manage their energy use and allow for better management of energy resources statewide. Important components of ASD are new digital meters (sometimes called "smart meters") that allow for a two-way communication between consumers and NV Energy.

12. The ASD project is designed to give consumers the tools and technology to help them make more informed choices about their energy use -- potentially saving money and helping the environment. ASD will allow consumers to view their energy usage data on a daily basis so that they can know exactly how much energy they are using over the course of the day, week, or month before they receive their bill.

13. NV Energy's ASD project is underway and going well. The project will be phased in over the next few years, with completion scheduled for December 2012.

14. A component of NV Energy's ASD project is a growing Demand Response ("DR") portfolio that includes direct load control, price-responsive load control, energy information programs, advanced consumer gateways, distributed solar energy, and energy storage.

15. In 2007, NV Energy implemented the Cool Share Program, a DR program that enables NV Energy to manage air conditioning use during

MORRIS PETERSON
ATTORNEYS AT LAW
00 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

periods of high energy demand. The Cool Share Program utilizes a two-way communications-enabled load control program that works with commercial and residential thermostats to provide additional energy capacity and small commercial peak demand reduction.

### ASD RFPs

16. In 2008, NV Energy developed the plans for a pilot ASD Program and NV Energy's attendant third-party vendor (hardware, software and ancillary services) needs. Thereafter, in early 2009, NV Energy issued three sets of RFPs. The three vendor RFPs were for (1) advanced metering infrastructure ("AMI") (*i.e.*, the smart meters); (2) meter data management software; and (3) field services. The AMI RFP contained requests for a demand response management system ("DRMS").

17. NV Energy received responses to the RFPs in the spring of 2009. Vendors that responded to the AMI RFP included proposals for DRMS. Although Comverge chose not respond to the AMI RFP, at least three bidders submitted proposals that included sub-proposals by Comverge as a DRMS subcontractor.

18. By May 2009, NV Energy identified the top three vendors for each respective RFP group. The top three vendors responsive to the AMI RFP were Sensus, Itron, and Elster Group. Each of these vendors included two different DRMS proposals, and all three vendors included a DRMS proposal from Comverge (*e.g.*, Sensus proposed its own DRMS solution and a Comverge DRMS solution).

### Vendor Evaluation/Probation Period

19. The NV Energy evaluation team invited the top three vendors to provide demonstrations and to conduct face-to-face meetings with the NV Energy ASD team. Sensus, one of the top three AMI vendors, demonstrated its own DRMS solution, but also invited Comverge to demonstrate its DRMS

solution on behalf of the vendor. During this meeting, Comverge did not invoke any of the protections under the NDA. Indeed, before, during and after this demonstration, Comverge did not provide notice that it considered its presentation to be "Confidential."

20. In June 2009, several NV Energy DR team members visited Comverge's development office in Denver, Colorado to become more familiar with Comverge's DRMS product. No documents were given to NV Energy during this visit and again, no documents or information designated as "Confidential" were presented or provided before, during or after the meeting.

21. During the course of the evaluation phase, it became clear that United States Department of Energy ("DOE") grant money might be available to fund the ASD project. The DOE grant money would enable NV Energy to expand beyond a pilot program and potentially appreciably escalate the benefits available to NV Energy's customers. The DOE grant application required, among other things, that NV Energy list the names of its partners and provide commitments from its partners that they could fulfill NV Energy's requirements. The grant application was due in August 2009. Accordingly, NV Energy identified feasible ASD partners, although still in the evaluation phase.

22. After further evaluation by NV Energy, Sensus was identified as the top AMI vendor. Work would be needed, however, to ensure that Sensus and the various vendors that would be required to work with it and NV Energy could be synergized with the various interested NV Energy business groups (*e.g.*, forecasting, procurement, customer relations, and demand reduction).

23. As such, NV Energy contacted each of the vendors, including Comverge as a subcontract to Sensus, and announced that they would be placed on a 90-day "probation" period while NV Energy conducted further evaluation and information gathering before finalizing any commitments with vendors. As the name of the "probation" period implies, this was solely for the purpose of

MORRIS PETERSON
ATTORNEYS AT LAW
00 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

further evaluation by NV Energy. NV Energy advised each of the potential vendors that no commitments or contracts were in place during the probationary period. All of the potential vendors, including Comverge, were told that although they were at the table as a lead potential vendor for some component of the ASD Program, there was no guarantee that they would remain in that position at the end of the probationary period.

24.   NV Energy also made clear the importance of a transparent "team" mentality during the evaluation phase. NV Energy told the potential vendors that although they were competitors, they were teaming together to help NV Energy with its ASD solution. No potential vendor, including Comverge, objected to this or any other ground rule associated with the probationary period.

25.   Further meetings and demonstrations were held with the vendors during the probationary period. During this time, Comverge, as subcontractor for Sensus, made additional demonstrations to NV Energy about its DRMS product. At one such presentation, Comverge made a PowerPoint presentation and provided NV Energy with a hardcopy. Just under one-half (7 of the 13 pages) were marked "Confidential & Proprietary. Do Not Disclose." Other than the few slides in this presentation, NV Energy is currently unaware of any other discussions of confidentiality, or efforts by Comverge to identify information as confidential, during the ASD process. Despite repeated requests by NV Energy, Comverge has failed to identify with specificity any such additional information.

### Comverge Does Not Fare Well in the Evaluation Phase

26.   During and after the probationary period, NV Energy developed concerns that Comverge's DRMS product was not sufficient to meet NV Energy's DRMS requirements. At least one factor in the analysis of Comverge's abilities was NV Energy's previous, at times problematic, experience

MORRIS PETERSON
ATTORNEYS AT LAW
00 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

with Comverge under a May 2008 Delivered Demand Reduction Agreement ("DDR Agreement"), under which Comverge provided services for the Cool Share Program.

27. Even though Comverge was removed from continued discussions as a subcontractor under the Sensus proposal, it remained an NV Energy vendor under the DDR Agreement. Comverge was also allowed to continue to attempt to persuade NV Energy concerning its DRMS capabilities. In fact, in December 2009, NV Energy issued a new DRMS RFP to provide alternative options. Comverge submitted a response.

28. At the same time that NV Energy was evaluating the responses to the new DRMS RFP, including Comverge's, Comverge and NV Energy were in the process of negotiating an extension of the DDR Agreement. Comverge proposed an amendment to the DDR Agreement that included its DRMS product on a trial basis. Ultimately, the parties extended the DDR Agreement, but did not include Comverge's DRMS product within its scope.

29. Meanwhile, NV Energy concluded its evaluation of the responses to the DRMS RFPs. Comverge finished in the top three vendors, but did not win the work.

*Comverge Demands/Threats*

30. On July 22, 2010, Comverge improperly invoiced NV Energy $1,200,000.00 for various services allegedly in "support of ASD Solution Design/Requirements." *See* Exhibit 2. The invoice did not reference a contract under which said "services" were purportedly invoiced. *Id.* Comverge repeated its demands to collect for this invoice during October and November of 2010. NV Energy never agreed to pay for such services and does not owe Comverge for its efforts to prevail as a subcontractor for Sensus.

31. During October and November, 2010, Comverge also claimed that it gave NV Energy "confidential" information during the ASD process. In

MORRIS PETERSON
ATTORNEYS AT LAW
00 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

addition, Comverge alleged that NV Energy improperly used and/or disseminated such information to third-parties and threatened potential legal action against NV Energy. Despite NV Energy's request, Comverge was unable to identify, with any specificity, the "confidential" information about which it was complaining.

32.     On November 18, 2010, Comverge sent the C&D Letter to NV Energy attached hereto as Exhibit 3. The C&D Letter purports to put NV Energy on notice of certain unspecified Confidential Information allegedly provided by Comverge to NV Energy from July 2009 through April 2010 under the NDA. The C&D Letter includes as three "bullet points" a description of information Comverge now claims as "confidential" under the NDA. The bullet-pointed description of confidential information appears nowhere in the NDA. Indeed, the description of "trade secrets" and "confidential information" embraces broad swathes of information including unspecified "software systems," "user functionality," "business information systems," and "theories."

33.     Comverge excluded from the C&D Letter the key requirement for "confidential treatment" under the NDA: the marking requirement. The NDA requires that "[a]ll documents to be treated as Confidential Information will be marked 'Confidential' and all orally or visually disclosed Confidential Information will be summarized in writing and delivered to the receiving Party within 30 days of its disclosure." Nevertheless, as of the date of filing this Complaint, NV Energy has located and returned to Comverge the only such "Confidential" document that it has located.

34.     In addition to the C&D Letter sent to NV Energy, NV Energy understands that Comverge has sent similar C&D Letters to a number of NV Energy's vendors. *See, e.g.*, Exhibit 4. Those C&D Letters give the false impression that the "bullet-pointed" description of confidential information is the same definition of confidential in the NDA, and allege that NV Energy obtained

MORRIS PETERSON
ATTORNEYS AT LAW
300 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

"trade secrets" and "confidential business information" from Comverge that NV Energy was prohibited from disclosing under the terms of the NDA. Comverge fails to mention its marking requirement obligations in the C&D Letters. These inaccuracies and omissions are plainly intended to interfere with NV Energy's valuable business relationships.

35. Comverge did not comply with the NDA it purports to invoke in the C&D Letters (assuming the NDA even applies). Comverge also has embarked on a course designed to harm NV Energy by interfering with the business relationships between NV Energy and its vendors.

### FIRST CLAIM FOR RELIEF
### DECLARATION AS TO RIGHTS PURSUANT TO 28 U.S.C. § 2201

36. Comverge's improper threats and demands against NV Energy and its vendors have created a reasonable belief that Comverge will file legal action against NV Energy and that such litigation will adversely affect NV Energy and its programs. NV Energy's programs, including, without limitation, its DR Programs, are extremely important to NV Energy, its customers, shareholders, and the State of Nevada as a whole.

37. Unless prevented by this Court, Comverge will continue to so affect NV Energy, the substantial investment it has made in its programs and NV Energy's customers' confidence. NV Energy's programs are essential to NV Energy's resource and efficiency plans that will inure to the substantial benefit of Nevada customers and NV Energy shareholders.

38. To resolve the legal and factual questions raised by Comverge and to afford relief from the uncertainty and controversy that Comverge has created through its demands and threats against NV Energy, NV Energy is entitled to a declaratory judgment of its rights under 28 U.S.C. §§ 2201-02.

39. NV Energy seeks a judicial declaration that it has a continued right to use the information in its possession and custody without interference or

MORRIS PETERSON
ATTORNEYS AT LAW
00 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

harassment by Comverge, and/or without any obligation or liability to Comverge under the NDA. NV Energy seeks a judicial declaration that it is not in violation of any rights Comverge may have or might pursue pursuant to the NDA and that it does not owe to Comverge the amounts improperly invoiced for design services (Exhibit 2).

40. In addition, NV Energy seeks reimbursement from Comverge of its attorneys' fees, costs, and interest associated with bringing this action.

## SECOND CLAIM FOR RELIEF
## INJUNCTIVE RELIEF

41. NV Energy is entitled to a permanent injunction (1) prohibiting Comverge from sending correspondence or otherwise communicating false and/or misleading descriptions of the NDA to NV Energy vendors in the future, and (2) prohibiting further damage to NV Energy and its business relationships by requiring that Comverge retract all such false and/or misleading statements and correspondence that it has previously issued.

42. The C&D Letters Comverge issued to NV Energy's vendors are false and/or misleading.

43. NV Energy's right to operate its business constitutes a property right. Comverge's unjustified interference with that right through issuance of the C&D Letters to NV Energy's vendors violated that right, and has done irreparable harm to NV Energy. Comverge's C&D Letters were plainly intended to interfere with NV Energy's valuable business relationships with its vendors through delaying or altogether precluding NV Energy from partnering with those vendors to further develop energy programs. In addition, the C&D Letters violate NV Energy's right to operate its business free from unjustified obstruction because they directed false and/or misleading information regarding NV Energy to its vendors.

MORRIS PETERSON
ATTORNEYS AT LAW
'00 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

44.     NV Energy has no adequate remedy at law other than a permanent injunction (1) forbidding Comverge from sending any additional C&D Letters to NV Energy's vendors containing the aforementioned false and/or misleading information, and (2) prohibiting further damage to NV Energy and its business relationships by requiring that Comverge retract all previously-issued C&D Letters and other statements containing the false and/or misleading information.

45.     Equity requires that the Court issue the permanent injunction requested by NV Energy because it is essential to preserve NV Energy's business interests and to prevent Comverge from publishing false information regarding NV Energy.

## PRAYER FOR RELIEF

WHEREFORE, NV Energy respectfully requests that the Court grant the following relief:

(1)     A determination and adjudication of the rights and liabilities of the parties with regard to the information shared between Comverge and NV Energy;

(2)     a declaration that NV Energy's use of any such information is lawful and does not infringe upon any rights, contractual or otherwise, of Comverge;

(3)     a declaration that NV Energy does not owe Comverge any money for "support of ASD Solution Design/Requirements";

(4)     a permanent injunction prohibiting Comverge from (1) disseminating false and/or misleading information regarding NV Energy and the NDA and (2) prohibiting further damage to Comverge and its business relationships by requiring that Comverge retract all false and/or misleading statements and correspondence that it has previously issued regarding NV Energy;

MORRIS PETERSON
ATTORNEYS AT LAW
300 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

(5) an award of interest, costs, and attorneys' fees incurred by NV Energy; and

(6) any further relief to which it may be entitled.

Respectfully Submitted,

MORRIS PETERSON

By_____
Steve Morris, Bar No. 1543
Akke Levin, Bar No. 9102
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, NV 89101

Attorneys for Plaintiff

**OF COUNSEL:**

J. Russell Campbell
Will Hill Tankersley, Jr.
J. Eric Getty
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, Alabama 35201
(205) 251-8100
rcampbell@balch.com
wtankers@balch.com
egetty@balch.com

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422